UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THOMAS K. VERDOCK, | : | NO. 3:03CV0556 (PCD) |
| Plaintiff, | : | |
| v. | : | |
| EMSAR, INC., | : | NOVEMBER 10, 2004 |
| Defendant. | : | |

## JOINT TRIAL MEMORANDUM

### SECTION A--PLAINTIFF

A1.  **Plaintiff's Claims of Fact Proposed for Stipulation**

A.  Plaintiff Thomas K. Verdock is a resident of Stratford, Connecticut.

*Defendant agrees.*

B.  For twenty years, Plaintiff was employed in various positions by Defendant EMSAR, Inc.

*Defendant agrees.*

C.  In a period from 1997 until October 18, 2002, Defendant assigned Plaintiff to a position titled electrical engineer.

*Defendant agrees.*

D.  Defendant classified Plaintiff as salaried and exempt from overtime requirements.

        *Defendant agrees.*

E.    Plaintiff's work primarily involved the use of his hands to assemble and service machinery and to install electrical circuitry and switches.

      *Defendant disagrees. Testimony of Plaintiff, Eric Negri, Gregory Sheehan, Keith Kleps; Exhibits—Plaintiff's Resume, Job description (Emsar 0028), Job description questionnaire (Emsar 0027), Emsar "FLSA Exemption" (Emsar 0026), Emsar "Worksheet to Help Determine Exempt/Non-Exempt Status. (5 pp.) (Emsar 0029-0033), Performance evaluations 2001-2002 (Emsar 0141-0147).*

F.    Plaintiff never obtained a college degree and never obtained equivalent academic training.

      *Defendant agrees that Plaintiff never obtained a college degree. Defendant disagrees that Plaintiff never obtained equivalent academic training. Testimony of Plaintiff; Exhibit—Plaintiff's Resume.*

G.    Plaintiff has no knowledge of electrical theory.

      *Defendant disagrees. Testimony of Plaintiff, Eric Negri, Gregory Sheehan, Keith Kleps; Exhibits—Plaintiff's Resume, Job description (Emsar 0028), Job description questionnaire (Emsar 0027), Emsar "FLSA Exemption" (Emsar 0026), Emsar "Worksheet to Help Determine Exempt/Non-Exempt Status. (5 pp.) (Emsar 0029-0033), Performance evaluations 2001-2002 (Emsar 0141-0147).*

H.    From time to time, Plaintiff was assigned to work on projects on behalf of Defendant on a "rush" basis. In particular, in the period April 2 through July 28, 2001, and July 8 through July 27, 2002, Plaintiff worked substantially in excess of 40 hours each week.

      *Defendant agrees that from time to time, Plaintiff was assigned to work on projects on behalf of Defendant on a "rush" basis. Defendant disagrees that in the period April 2 through July 28, 2001, and July 8 through July 27, 2002, Plaintiff worked substantially in excess of 40 hours each week. Testimony of Plaintiff, Eric Negri, Gregory Sheehan, Keith Kleps, Ruth Pesavento; Exhibits— Payroll Records and Weekly Labor Reports.*

**Rome McGuigan, P.C.** • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

I.  Defendant did not pay Plaintiff overtime compensation at 1.5 times his regular hourly rate for overtime hours that he worked.

*Defendant agrees.*

J.  Plaintiff's hourly compensation on the basis of a 40-hour work week was $35.54.

*Defendant disagrees. Testimony of Plaintiff, Ruth Pesavento, Mark Kavulich; Exhibits—Payroll Records; October 2002 Letter from Plaintiff to Emsar.*

**A2.   Plaintiff's Proposed Finding of Fact**

A.  Plaintiff worked 326 overtime hours for which he was not paid at an overtime rate in the two-year period ending October 17, 2002.

Basis: Plaintiff's testimony; testimony of James Tamborra, former supervisor.

*Defendant disagrees. Testimony of Plaintiff, Eric Negri, Gregory Sheehan, Keith Kleps, Ruth Pesavento, Dr. Bernard Feigenbaum; Exhibits—Payroll Records and Weekly Labor Reports.*

**A3.   Plaintiff's Claims of Law**

A.  Defendant Emsar is engaged in commerce within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (the "FLSA" or "the Act"), and is subject to the provisions of the Act.

*Defendant agrees.*

B.  This court has jurisdiction over this cause of action pursuant to 28 U.S.C. § 1331 as Plaintiff's cause of action arises under 29 U.S.C. § 216(b).

*Defendant agrees.*

C.  Venue is proper inasmuch as Defendant's place of business is located in Connecticut and the events or omissions giving rise to this claim all occurred within this judicial district.

*Defendant agrees.*

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

D.  Defendant Emsar bears the burden of establishing that Verdock was exempt. *Reich v. Newspapers of New England, Inc.*, 44 F.3d 1060, 1073 (1st Cir. 1995). Exemptions are to be construed narrowly against the employer. *Id., at 1070*.

   *Defendant agrees that it bears the burden of establishing that Plaintiff was exempt. Defendant disagrees that exemptions are always to be construed narrowly against the employer. Freeman v. National Broadcasting Company, 80 F.3d 78 (2d Cir. 1996).*

E.  Plaintiff is not exempt under any of the tests for exempt status established under federal or state law. 29 U.S.C. § 213; Conn. Gen. Stat. § 31-60; Conn. Agencies Regs. § 31-60-16.

   *Defendant disagrees. Plaintiff was exempt from the overtime requirements of the Fair Labor Standards Act and Connecticut wage laws as a professional and/or administrative employee. 29 U.S.C. § 213(a)(1); 29 CFR §§541.2, 541.3 and 541.118; Conn. Gen. Stat. §31-76i; Conn. Regs. §§ 31-60-15 and 31-60-16*

F.  Plaintiff is not exempt under the "learned professional" exemption: he worked primarily with his hands as a technician and he lacked any college degree. "The core requirement of the learned professional exemption is that the duties call for a person who is in a 'learned profession' with at least a college degree in a specialized type of learning." *Bolduc v. National Semiconductor Corp.*, 5 Wage Hour Cases2d 172 (D.C. Maine 1998).

   *Defendant disagrees. Plaintiff satisfied the "job duties" test for an exempt professional and/or administrative employee as defined by the Fair Labor Standards Act and Connecticut wage laws. 29 U.S.C. §213; 29 CFR §§541.2 and 541.3; Conn. Gen. Stat. §31-76i; Conn. Regs. §§ 31-60-15 and 31-60-16.*

G.  Plaintiff is entitled to liquidated damages and attorney fees. FLSA, 29 U.S.C. § 216(b); Conn. Gen. Stat. § 31-72.

   *Defendant disagrees. Defendant acted in good faith and had reasonable grounds for classifying Plaintiff as an exempt professional and/or administrative employee, and Plaintiff is therefore not entitled to liquidated damages, double damages and attorney's fees. 29 U.S.C. § 260; McLaughlin v. Richland Shoe, 486 U.S. 128, 100 L.Ed. 2d 115, 108 S.Ct. 1677 (1988); Broekemeier v. Fourth Universalist Society, 86 F. Supp. 2d 280, 288 (S.D.N.Y. 2000).*

4

**A4.   Plaintiff's List of Proposed Exhibits.**

1. Job description (Emsar 0028).

2. Job description questionnaire (Emsar 0027).

3. Emsar "FLSA Exemption" (Emsar 0026).

4. Emsar "Worksheet to Help Determine Exempt/Non-Exempt Status. (5 pp.) (Emsar 0029-0033).

5. Emsar payroll "audit report" printed 3/13/03 (Emsar 0049).

6. Emsar Memo to Plaintiff 10/16/02 (Emsar 0050).

7. Termination letter 10/18/02 (Emsar 0055).

8. Employee status Notice 3/13/00 (Emsar 0118).

9. Performance evaluations 2001-2002 (Emsar 0141-0147).

10. Job Application (Emsar 0152-0153).

11. Resume (Emsar 0154-0155).

12. Employee timecard worksheets (Emsar 0234-0236).

13. Payroll summary (Emsar 0238-0250).

Defendant agrees that the exhibits identified by Plaintiff are admissible.

**A5.   Plaintiff's Witnesses.**

A.   <u>Plaintiff</u>.  Plaintiff will testify as to his background, training and experience; the nature and specific details of the work he performed as "electrical engineer;" that his work was primarily that of a skilled technician, performed primarily with his hands; that his skills were essentially self-taught; that he lacked a college education; that he had no knowledge of electrical theory, and simply built machinery using parts and supplies that he put together by trial and error without

5

        engineering expertise; that he performed work on special projects for Defendant; and that he worked 326 overtime hours on special projects within the two-year period prior to his termination.

B.    <u>James Tamborra</u>, former supervisor. Mr. Tamborra is expected to testify as to the nature and specific details of the work Plaintiff was required to perform; Plaintiff's performance of work on special projects for Defendant; and the fact that Plaintiff came in very early and worked diligently, substantially more than 40 hours per week on special projects, within the two-year period prior to Plaintiff's termination.

A6.    **Plaintiff's Anticipated Evidentiary Problems**

Plaintiff anticipates that Defendant may attempt to introduce evidence concerning Plaintiff's visits to his allergist. Plaintiff objects that the probative value (if any) of such evidence is outweighed by its potentially prejudicial and/or time-wasting effect. FRE Rule 403.

*Defendant disagrees. Evidence concerning the frequency and duration of Plaintiff's visits to his allergist during the period of Plaintiff's employment and the circumstances surrounding Defendant's request for information concerning those visits is directly relevant to establish Plaintiff's hours of work and to Plaintiff's credibility. As such, the probative value of such evidence far outweighs any potential prejudicial effect. FRE Rules 401-403.*

### SECTION B-DEFENDANT

1.    **Defendant's Claims of Fact Proposed for Stipulation**

A.    Plaintiff was employed by Defendant from November of 1982 until October 18, 2002.

*Plaintiff agrees.*

B.    From 1997 until his termination Plaintiff was employed as an Electrical Engineer.

*Plaintiff agrees that he had the title of Electrical Engineer in that period.*

C.     Plaintiff took college courses and technical courses in electrical design, computer skills, and machine repair.

*Plaintiff agrees that he had 15 credits in liberal arts courses at Fairfield University in 1969-70, and 18 credits at Mattatuck Community College in 1973-74.*

D.     Defendant classified Plaintiff as an exempt employee who was not entitled to overtime pay under state and federal law.

*Plaintiff agrees.*

E.     Plaintiff was paid on a salary basis from at least 1997 through the date of his termination.

*Plaintiff agrees, but notes that he was paid extra for reporting to work if he were called in after regular hours (call-in pay).*

F.     From January 2001 through May 2001, Emsar paid Plaintiff a weekly salary of $1,340.00. Effective June 1, 2001, Plaintiff's weekly salary was $1,386.80. Effective June 1, 2002, and at the time he was terminated, Plaintiff's weekly salary was $1,421.60.

*Plaintiff agrees.*

G.     Effective on or about March 10, 2000, Plaintiff was paid "call in pay" for when he was called in to work outside of his regular work day.

*Plaintiff agrees.*

H.     In October 2002 Defendant requested documentation from Plaintiff to confirm the dates and times of Plaintiff's office visits with his allergist.

*Plaintiff agrees.*

I.     Plaintiff refused to produce the requested documentation.

*Plaintiff denies that he refused, but agrees that he did not produce the documentation.*

*Rome McGuigan, P.C.* • Attorneys at Law
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

J.    In a letter to Defendant in or about October 2002 Plaintiff wrote that it was his understanding his position was classified as exempt from the overtime requirements of the FLSA.

*Plaintiff agrees.*

K.    Plaintiff was terminated from employment effective October 18, 2002 as a result of his failure to produce the requested documentation.

*Plaintiff agrees that he was terminated on that date but lacks knowledge as to the causation.*

**2.    Defendant's Proposed Findings of Fact**

A.    In the course of his employment with Defendant, Plaintiff consistently and regularly exercised discretion and independent judgment. (Testimony of Plaintiff, Eric Negri, Gregory Sheehan, Keith Kleps).

*Plaintiff disagrees, inasmuch as his exercise of judgment and discretion was substantially limited both by his supervisors and by the nature of the work he performed. (Testimony of Plaintiff.)*

B.    Plaintiff worked independently with little or no supervision. (Testimony of Plaintiff, Eric Negri, Gregory Sheehan, Keith Kleps).

*Plaintiff agrees that he worked with limited supervision, but disagrees that there was "no supervision." (Plaintiff's testimony.)*

C.    Plaintiff was responsible for the design, selection and testing of electrical components involved in the manufacturing process. (Testimony of Plaintiff, Eric Negri, Gregory Sheehan, Keith Kleps).

*Plaintiff disagrees: he could not design electrical components; he selected from available components and tested them. (Plaintiff testimony.)*

D.    Plaintiff was responsible for the design and development of computer programs to operate production equipment. (Testimony of Plaintiff, Eric Negri, Gregory Sheehan, Keith Kleps).

8

      *Plaintiff disagrees: Plaintiff had limited responsibility and ability to design and develop computer programs. Defendant retained an outside contractor/consultant to design computer programs.*

E.   Plaintiff was responsible for programming production equipment and monitoring the equipment to resolve any abnormalities. (Testimony of Plaintiff, Eric Negri, Gregory Sheehan, Keith Kleps).

      *Plaintiff agrees, but notes that his programming responsibility and ability was limited.*

F.   Plaintiff was required to utilize his analytical ability, technical training, knowledge, and skills to resolve problems with hardware and software used in production equipment. This involves the analysis of information and the comparison of possible courses of action, deciding on a course of action after considering the various possibilities, and implementing a solution. (Testimony of Plaintiff, Eric Negri, Gregory Sheehan, Keith Kleps.)

      *Plaintiff agrees.*

G.   The Plaintiff's position required theoretical and practical application of highly specialized knowledge in computer systems and components utilized in production equipment. (Testimony of Plaintiff, Eric Negri, Gregory Sheehan, Keith Kleps.)

      *Plaintiff disagrees: if his position required "theoretical" and "Highly specialized" knowledge, he could not have performed the functions of the job. Plaintiff has very limited knowledge of electrical theory, and performed his tasks by trial and error rather than by the application of theory to the tasks to which he was assigned. (Plaintiff's testimony.)*

H.   Plaintiff determined the interaction of the equipment with the operator and controlled the type of information that can be extracted from the manufacturing process. (Testimony of Plaintiff, Eric Negri, Gregory Sheehan, Keith Kleps.)

      *Plaintiff agrees.*

I.   Plaintiff affected the manufacturing process and the amount of output produced. (Testimony of Plaintiff, Eric Negri, Gregory Sheehan, Keith Kleps.)

9

*Plaintiff agrees, but notes that all involved in the manufacturing process affected it.*

J.  Plaintiff's job duties included specifying the electrical components of production equipment, computer programming of PLC (Programmable Logic Controller) and interfaces, designing the schematics and circuit boards used in production machines, wiring new machines and maintaining electrical components on the factory floor. (Testimony of Plaintiff, Eric Negri, Gregory Sheehan, Keith Kleps.)

*Plaintiff disagrees. Plaintiff eliminated the use of circuit boards because he did not know how to fix them; instead he used less sophisticated equipment.*

K.  Plaintiff was responsible for selecting, pricing and ordering commercial products such as switches, controllers, sensors, power supplies, and other machine controls for assembly equipment and integrating them into a PLC based machine operating system. (Testimony of Plaintiff, Eric Negri, Gregory Sheehan, Keith Kleps.)

*Plaintiff agrees.*

L.  Plaintiff's job duties required advanced electrical design, computer and machine repair skills which he acquired through courses and on the job experience. (Testimony of Plaintiff, Eric Negri, Gregory Sheehan, Keith Kleps.)

*Plaintiff disagrees. Plaintiff does not consider the skills he performed as "advanced," and the courses were very limited in scope; he did not take such courses.*

M.  Through several technical training courses which he took and from 20 years of on the job training, Plaintiff acquired advanced skills in designing electrical machine components, and related skills in maintaining and repairing sophisticated manufacturing equipment. Through the courses he took and his many years of job experience, Plaintiff also acquired advanced computer skills which he used during his employment at Emsar. (Testimony of Plaintiff, Eric Negri, Gregory Sheehan, Keith Kleps; Exhibit—Resume of Plaintiff.)

*Plaintiff disagrees. Plaintiff took courses on Programmable Logic Controllers (PLCs), but had no knowledge or understanding of how PLC's were designed or how their programs were created; computer programming was performed by a*

10

*consultant, and Plaintiff merely copied programs and made changes through trial and error.*

N. Plaintiff did not work 326 hours of overtime as he claims. (Testimony of Plaintiff, Eric Negri, Gregory Sheehan, Keith Kleps, Ruth Pesavento, Dr. Bernard Feigenbaum; Exhibits—Payroll Records and Weekly Labor Reports.)

*Plaintiff disagrees.*

O. For approximately a year and a half prior to his termination in October 2002, Plaintiff was leaving work each Tuesday afternoon at approximately 1:40 p.m. to purportedly see a doctor and receive an allergy shot. Plaintiff did not in fact see his doctor and receive an allergy shot on each occasion when he left work early. (Testimony of Ruth Pesavento, Keith Kleps, Dr. Bernard Feigenbaum.)

*Plaintiff disagrees; he left at 2 p.m. at the earliest and sometimes worked until 4:30 on Tuesdays, if his work load required.*

P. Despite these early departures, Plaintiff's salary was not reduced. (Testimony of Ruth Pesavento, Mark Kavulich.)

*Plaintiff agrees, but notes that he made up all hours by starting work very early in the morning and skipping breaks.*

Q. Plaintiff recorded his hours worked on the "Weekly Labor Record." (Testimony of Plaintiff, Eric Negri, Gregory Sheehan, Keith Kleps.)

*Plaintiff agrees that he recorded hours, but not that they accurately reflected the hours he worked; hours were recorded for budget purposes, not as accurate time records. Plaintiff's testimony; testimony of Jim Tamborra.*

R. The "Weekly Labor Record" Plaintiff prepared of the hours he worked establish that he worked a total of 39.5 overtime hours in excess of 40 hours per week in all of the weeks in question. (Exhibits—Weekly Labor Record.)

*Plaintiff disagrees: Such records do not "establish" anything.*

11

S.   Defendant paid Plaintiff "call in" pay for the 39.5 hours Plaintiff worked in excess of 40 hours per week. (Testimony of Ruth Pesavento, Mark Kavulich; Exhibits—Payroll Records.)

*Plaintiff agrees that he received call-in pay, but only if he were called in after having left work.*

T.   There was a clear mutual understanding between Plaintiff and Defendant that Plaintiff's salary was compensation for hours worked each workweek whatever their number, rather than for working 40 hours or some other fixed weekly work period. (Testimony of Plaintiff, Ruth Pesavento, Mark Kavulich; (Exhibits—Payroll Records; October 2002 Letter from Plaintiff to Emsar.)

*Plaintiff disagrees; Plaintiff understood and believed that he was expected to work and did work 40 hours per week regularly; that he was to be paid call-in pay if he were called into work after having left for the day; and that he should have been paid overtime at time-and-one-half for each hour he worked in excess of 40 hours per week.*

U.   Defendant acted in good faith at all times, relative to Plaintiff's employment status and classification as a salaried exempt employee. (Testimony of Ruth Pesavento, Barbara Ruotolo; Exhibits—FLSA Exemption; Job Description Questionnaire; Worksheet to Help Determine Exempt/Non-Exempt Status.)

*Plaintiff disagrees: Defendant knew, but chose to ignore, that Plaintiff had very little college education and that he had never come close to obtaining a college degree, but **Defendant** filled in a Job Description Questionnaire that stated Plaintiff had 4 yrs College (Emsar Document 0027) when Defendant knew, from Plaintiff's Job Application (Emsar Document 0152) that Plaintiff claimed to have only one year of college and from his Resume (Emsar Document 0154) that Plaintiff claimed to have completed 15 credits at Fairfield University and 18 credits at Housatonic Community College. Defendant's document 0027 is handwritten, but is not in Plaintiff's hand and Plaintiff did not contribute the information contained therein. Defendant's reliance on "FLSA Exemption" document (Emsar Document 0026) is misplaced since it states: "The position requires a bachelors degree in electrical engineering and 5 years experience in the field of electrical controls." The document improperly reaches the stated "Conclusion: This position is considered **Exempt** under the FLSA requirements based on the following: . . .A bachelors Degree in Electrical Engineering and 5*

12

*years working experience is required." Defendant did not act in good faith in classifying Plaintiff's position as exempt since it premised the classification on false information and knew that information to be false.*

3. **Defendant's Claims of Law**

A. Defendant paid Plaintiff on a "salary basis" as defined by the Fair Labor Standards Act and Connecticut wage laws. 29 U.S.C. §213; 29 CFR §541.118; Conn. Gen. Stat. §31-76i; Conn. Regs. §§ 31-60-15 and 31-60-16.

*Plaintiff does not dispute that he was paid on a salary basis.*

B. Plaintiff satisfied the "job duties" test for an exempt professional and/or administrative employee as defined by the Fair Labor Standards Act and Connecticut wage laws. 29 U.S.C. §213; 29 CFR §§541.2 and 541.3; Conn. Gen. Stat. §31-76i; Conn. Regs. §§ 31-60-15 and 31-60-16.

*Plaintiff denies.*

C. Plaintiff was exempt from the overtime requirements of the Fair Labor Standards Act and Connecticut wage laws as a professional and/or administrative employee. 29 U.S.C. § 213(a)(1); 29 CFR §§541.2, 541.3 and 541.118; Conn. Gen. Stat. §31-76i; Conn. Regs. §§ 31-60-15 and 31-60-16.

*Plaintiff denies.*

D. Plaintiff is not entitled to be paid overtime for the hours he claimed he worked in excess of 40 hours per week. 29 U.S.C. §213(a)(1); 29 CFR §§541.2; 541.3 and 541.118; Conn. Gen. Stat. §31-76i; Conn. Regs. §§ 31-60-15 and 31-60-16.

*Plaintiff denies.*

E. If the Court finds that Plaintiff is entitled to be paid overtime for any hours worked in excess of 40 hours per week, the overtime hours are payable at a rate of one half Plaintiff's regular hourly rate. The regular hourly rate is determined by dividing the weekly compensation by the actual hours worked during the week, and the Plaintiff receives and additional 50% of the regular hourly rate for hours beyond 40. 29 C.F.R. §778.114(a); <u>Black v. Comdial Corporation</u>, No. 92-081-C,

13

1994 U.S. Dist. LEXIS 2457 (W.D. Va. February 15, 1994); Conn. Gen. Stat. §31-76b.

*Plaintiff denies. The* Comdial *case applies to an individual who was paid pursuant on a fluctuating workweek basis. This was not Plaintiff's arrangement. Plaintiff was not paid on a fluctuating workweek basis, but was paid for a 40-hour workweek and was not paid any compensation for hours over 40 in a workweek unless he were called in on the weekend. He was not paid any additional compensation for his overtime work during weekdays, and therefore should receive 1.5 times his regular hourly rate for all overtime hours that he proves that he worked.*

F.  Defendant acted in good faith and had reasonable grounds for classifying Plaintiff as an exempt professional and/or administrative employee, and Plaintiff is therefore not entitled to liquidated damages, double damages and attorney's fees. 29 U.S.C. § 260; McLaughlin v. Richland Shoe, 486 U.S. 128, 100 L.Ed. 2d 115, 108 S.Ct. 1677 (1988); Broekemeier v. Fourth Universalist Society, 86 F. Supp. 2d 280, 288 (S.D.N.Y. 2000).

*Denied. Defendant premised Plaintiff's classification falsely on the basis that he had a four-year college degree. Defendant knew this to be untrue but engaged in a pretense in order to reduce its costs. Defendant therefore did not act in good faith. Defendant bears the burden of proving good faith and reasonableness, but the burden is a difficult one, with double damages being the norm and single damages the exception.* Reich v. Southern New England Telecommunications Corp., *121 F.3d 58, 71 (2d Cir.1997). To establish good faith, the employer must take active steps to ascertain the dictates of the FLSA and then act to comply with them. Id. "Good faith" in this context requires more than ignorance of the prevailing law or uncertainty about its development. It requires that an employer first take active steps to ascertain the dictates of the FLSA and then move to comply with them*

G.  Connecticut General Statutes Section 31-72 provides for a discretionary award of double damages to employees who are successful in actions against their employer for wages due. Awards for double damages and attorney's fees require evidence of bad faith, arbitrariness or unreasonableness. Sansone v. Clifford, 219 Conn. 217, 229 (1991).

*Plaintiff agrees; but Plaintiff contends that Defendant acted in bad faith.*

14

**4.** **Defendant's Exhibits**

In addition to the Exhibits listed by Plaintiff, Defendant's proposed Exhibits are the following:

A. October 2002 Letter from Thomas Verdock to Emsar (Emsar 0040).

B. October 18, 2002 Letter from Ruth Pesavento to Thomas Verdock (Emsar 0041).

C. October 18, 2002 Notes of Ruth Pesavento (Emsar 0056).

D. October 18, 2002 Employee Status Notice (Emsar 0111).

E. June 1, 2002 Employee Status Notice (Emsar 0113).

F. June 1, 2001 Employee Status Notice (Emsar 0115).

G. June 1, 2000 Employee Status Notice (Emsar 0116).

H. June 2001 Performance Appraisal Cover Page (Emsar 0140).

I. June 1997 Performance Appraisal (Emsar 0148-0151).

J. Weekly Labor Record (Emsar 0184-0233).

K. Plaintiff's Resume (Deposition of Thomas Verdock, Defendant's Exhibit 1).

L. March 13, 2003 Letter from Andrew Houlding to Ruth Pesavento (Emsar 0044-0046).

M. January 27, 2004 Letter from Doctor Bernard Feigenbaum, MD to Dan Green, Esq. (Deposition of Thomas Verdock, Defendant's Exhibit 10).

N. January 29, 2004 Letter from Doctor Bernard Feigenbaum, MD to Dan Green, Esq.

O. Plaintiff's Objections and Responses to Defendant Emsar's First Set of Interrogatories and Requests for Production.

**5.** **Defendant's Witnesses**

Business address for all witnesses is c/o Emsar, Inc., 125 Access Rd., Stratford, CT 06615 unless otherwise indicated.

A.  Ruth Pesavento, Director of Human Resources: Plaintiff's status as an exempt employee, Defendant's good faith basis for classifying Plaintiff as an exempt employee, wages paid to Plaintiff by Defendant, Plaintiff's early departures for alleged doctor appointments, Plaintiff's termination.

B.  Eric Negri, former Manager of Equipment and Development: Plaintiff's job duties, skills and knowledge; Plaintiff's hours of work.

C.  Gregory Sheehan, Manager of Engineering: Plaintiff's job duties, skills and knowledge; Plaintiff's hours of work.

D.  Keith Kleps, Director of Assembly Operations: Plaintiff's job duties, skills and knowledge; Plaintiff's hours of work.

E.  Mark Kavulich, Director of Finance: Plaintiff's status as an exempt employee, wages paid to Plaintiff by Defendant.

F.  Barbara Ruotolo former human resources employee of Defendant: 34 Crestview Drive, Woodbridge, CT 06525. Plaintiff's status as an exempt employee, Defendant's good faith basis for classifying Plaintiff as an exempt employee.

G.  Dr. Bernard Feigenbaum, Plaintiff's allergist: 728 Post Rd. East, Westport, CT, 06880. Dates of Plaintiff's allergy appointments, and how long appointments lasted.

**6.** **Evidentiary Problems**

Defendant does not anticipate evidentiary problems at this time.

## SECTION C

1. **Attorneys who will try the case**

   For the Plaintiff:
   Andrew Houlding
   Rome, McGuigan, P.C.
   One State Street
   Hartford, CT 06103-3101
   (860) 493-3468

   For the Defendant:
   Tasos C. Paindiris
   William J. Anthony
   Jackson Lewis LLP
   55 Farmington Avenue
   Suite 1200
   Hartford, CT 06105
   (860) 522-0404

2. **Jury/Court case**

   This is a bench trial.

3. **Trial Time**

   The parties estimate the trial time will not exceed two days.

4. **Trial by Magistrate**

   The parties have not agreed to trial by Magistrate.

5. **Further proceedings prior to trial**

   The parties do not anticipate further proceedings prior to trial.

6. **Settlement**

   The parties do not believe settlement is reasonably likely.

17

Respectfully submitted,
PLAINTIFF,
THOMAS K. VERDOCK,

_____
Andrew Houlding (ct 12137)
Rome, McGuigan, P.C.
One State Street
Hartford, CT 06103-3101
Tel: (860) 493-3468
Fax: (860) 724-3921
E-mail: ahoulding@rms-law.com


Respectfully submitted,
DEFENDANT,
EMSAR INCORPORATED,

_____
Tasos C. Paindiris (ct 16739)
William J. Anthony (ct 17865)
Jackson Lewis LLP
55 Farmington Avenue, Suite 1200
Hartford, Connecticut 06105
Tel: (860) 522-0404
Fax: (860) 247-1330
E-mail: PaindirT@jacksonlewis.com

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Joint Trial Memorandum was sent via electronic and regular mail, postage prepaid, on this 10th day November, 2004, to the following counsel of record:

Tasos C. Paindiris, Esq.
Jackson Lewis LLP
55 Farmington Avenue, Suite 1200
Hartford, CT 06105

　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　Andrew Houlding

8835-4/388366

19

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726